UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
MAYRA MARTINEZ JUAREZ, DIGNA LILI ACOSTA
MARTINEZ, ANDRES ESCOBAR RAFAEL
and FELICITA DE LA ROSA, Individually, and        Civil Action No.
on behalf of all others similarly situated,

                     Plaintiffs,

   -against-

ULTRA SONIC RVC, INC., ULTRA SONIC, INC. and
DONALD GELESTINO,

                   Defendants.
-----------------------------------------------------------------------X

## CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiffs, Mayra Martinez Juarez, Digna Lili Acosta Martinez, Andres Escobar Rafael, and Felicita De La Rosa, individually and on behalf of all others similarly situated, by and through their undersigned counsel, as and for their Complaint against Defendants, Ultra Sonic RVC, Inc., Ultra Sonic, Inc., and Donald Gelestino, allege as follows:

## JURISDICTION AND VENUE

1.     Plaintiffs bring this action under the Fair Labor Standards Act (hereinafter the "FLSA"), 29 U.S.C. §§ 201 et seq., the New York Labor Articles 6 and 19, and the New York Codes, Rules, and Regulations 142-2.2 (hereinafter the "New York Labor Articles") to recover unpaid overtime compensation and for other relief. This action is brought as a collective action pursuant to 29 U.S.C. §216(b) and as a state-law class action under Fed. R. Civ. P. 23(b)(3).

2.     Jurisdiction over Plaintiffs' FLSA claims is based upon Section 216(b) of the FLSA, 29 U.S.C. § 216(b), and upon 28 U.S.C. § 1331.

3.      The Court has supplemental jurisdiction over the plaintiffs' state law claims pursuant to 28 U.S.C. §1367(a) because these claims are so related to the FLSA claims that they form part of the same case or controversy.

4.      Venue in this district is appropriate under 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to these claims occurred in this judicial district.

## PARTIES

5.      Plaintiff Mayra Martinez Juarez ("Juarez") is a resident of Freeport, New York.

6.      Juarez was employed by Defendants as a car wash attendant from on or about June 2013 until on or about December 26, 2015.

7.      Plaintiff Digna Lili Acosta Martinez ("Martinez") is a resident of Freeport, New York.

8.      Martinez was employed by Defendants as a car wash attendant from on or about June 2013 to on or about March 21, 2016.

9.      Plaintiff Andres Escobar Rafael ("Rafael") is a resident of Freeport, New York.

10.     Rafael was employed by Defendants as a car wash attendant from on or about June 2013 to on or about March 23, 2016.

11.     Plaintiff Felicita De La Rosa ("La Rosa") is a resident of Freeport, New York.

12.     La Rosa has been employed by Defendants as a car wash attendant from on or about June 2013 until the present.

13.     Upon information and belief, Defendant, Ultra Sonic RVC, Inc., is a domestic corporation duly organized and existing under and by virtue of the laws of the State of New York.

14.     Upon information and belief, Defendant, Ultra Sonic, Inc., is a domestic corporation duly organized and existing under and by virtue of the laws of the State of New York.

15.     Upon information and belief, the Defendant, Donald Gelestino ("Gelestino") is an individual residing in the State of New York.

16.     Gelestino is an officer, director, and/or managing agent of Ultra Sonic RVC, Inc. who participated in the day-to-day operations of Ultra Sonic RVC, Inc.  Upon information and belief, at all times relevant, Gelestino exercised operational control over Ultra Sonic RVC, Inc., controlled significant business functions of Ultra Sonic RVC, Inc., determined employee salaries, made hiring decisions, and acted on behalf of and in the interest of Ultra Sonic RVC, Inc. in devising, directing, implementing, and supervising the wage and hour practices and policies relating to the employees of Ultra Sonic RVC, Inc.  As such, at all relevant times, Gelestino has been an employer under the FLSA and the NYLL.  Gelestino is jointly and severally liable with Ultra Sonic RVC, Inc.

17.     Upon information and belief, Gelestino is an officer, director, and/or managing agent of Ultra Sonic, Inc. who participated in the day-to-day operations of Ultra Sonic, Inc. Upon information and belief, at all times relevant, Gelestino exercised operational control over Ultra Sonic, Inc., controlled significant business functions of Ultra Sonic, Inc., determined employee salaries, made hiring decisions, and acted on behalf of and in the interest of Ultra Sonic, Inc. in devising, directing, implementing, and supervising the wage and hour practices and policies relating to the employees of Ultra Sonic, Inc.  As such, at all relevant times, Gelestino has been an employer under the FLSA and the NYLL.  Gelestino is jointly and severally liable with Ultra Sonic, Inc.

FACTS

18.    Ultra Sonic RVC, Inc. owns and operates a car wash located at 1 Merrick Road, Rockville Centre, New York.

19.    Ultra Sonic, Inc. owns and operates a car wash located at 249-24 Jericho Turnpike, Bellerose, New York.

20.    At all times relevant to this action, Juarez was employed as a car wash attendant for the benefit of and at the direction of defendants and worked at both car wash locations.

21.    Juarez's responsibilities included cleaning and drying cars.

22.    During her employment, Juarez generally worked five days a week with Tuesdays and Sundays being her days off.

23.    During her employment, Juarez's work schedule was as follows: From May through September each year: Monday, Wednesday and Friday - 7:30 a.m. until 7:30 p.m. and Thursday and Saturday - 10:00 a.m. until 7:30 p.m.

24.    During this time, Juarez was given a 30 minute lunch break each day.

25.    During this time, Juarez worked 52.5 hours each week.

26.    During her employment, from October through April each year, Juarez worked from 7:30 a.m. until 2:30 p.m.

27.    During this time, Juarez was given a 30 minute lunch break each day.

28.    During this time, Juarez worked 32.5 hours a week.

29.    During her employment, Juarez was paid partly by check and partly in cash each week.

30.     At all times relevant to this action, Martinez was employed as a car wash attendant for the benefit of and at the direction of defendants and worked at both car wash locations.

31.     Martinez's responsibilities included cleaning and drying cars.

32.     During her employment, Martinez generally worked five days a week with Tuesdays and Sundays being her days off.

33.     During her employment, Martinez's work schedule was as follows: Mondays and Fridays – 10:00 a.m. – 7:30 p.m. and Wednesdays, Thursdays and Saturdays – 7:30 a.m. to 7:30 p.m.

34.     During this time, Martinez was given one half hour meal break each day.

35.     During this time, Martinez was paid partly by check and partly in cash each week.

36.     During this time, Martinez worked 52.5 hours a week.

37.     At all times relevant to this action, Rafael was employed as a car wash attendant for the benefit of and at the direction of defendants and worked at defendants' car wash located at 1 Merrick Road, Rockville Centre, New York only.

38.     Rafael's responsibilities included cleaning and drying cars.

39.     During his employment, Rafael generally worked five days a week with Thursdays and Sundays being his days off.

40.     During his employment, Rafael's work schedule was as follows: Mondays, Tuesdays, Wednesdays, Fridays, and Saturdays – 7:30 a.m. to 7:30 p.m.

41.     During this time, Rafael was given one half hour meal break each day.

42.     During this time, Rafael was paid partly by check and partly in cash each week.

43.     During this time, Rafael worked 57.5 hours a week.

44.     At all times relevant to this action, La Rosa has been employed as a car wash attendant for the benefit of and at the direction of defendants and has worked at defendants' car wash located at 1 Merrick Road, Rockville Centre, New York only.

45.     La Rosa's responsibilities include cleaning and drying cars.

46.     During her employment, La Rosa has generally worked five days a week with Thursdays and Sundays being her days off.

47.     During her employment, La Rosa's work schedule has been as follows: Mondays, Tuesdays, Wednesdays, Fridays, and Saturdays – 7:30 a.m. to 7:30 p.m.

48.     During this time, La Rosa has been given one half hour meal break each day.

49.     During this time, La Rosa has been paid partly by check and partly in cash each week.

50.     During this time, La Rosa has worked 57.5 hours a week.

51.     During plaintiffs' employment, plaintiffs and other car wash attendants were paid by the hour and received tips.

52.     During their employment, plaintiffs and other car wash attendants were paid less than the statutory minimum wage.

53.     During their employment, defendants never informed plaintiffs and other car wash attendants of the Federal and New York state tip credit requirements.

54.     During their employment, defendants regularly took a tip credit towards the basic minimum hourly rate paid to plaintiffs and other car wash attendants.

55.     During their employment, defendants regularly required plaintiffs and other car wash attendants to share tips with employees who did not provide direct customer service.

56. During their employment, plaintiffs and other car wash attendants worked shifts in excess of 10 hours.

57. Defendants, however, did not pay plaintiffs and other car wash attendants spread of hours compensation.

58. During their employment, plaintiffs and other car wash attendants did not punch in and out themselves.

59. During their employment, defendants' cashiers punched in and out for plaintiffs and other car wash attendants.

60. During their employment, defendants failed to maintain accurate time records of the hours that plaintiffs and other car wash attendants worked.

61. During their employment, defendants' cashiers punched plaintiffs and other car wash attendants out for the day before their work shifts ended.

62. When plaintiffs and other car wash attendants worked more than 40 hours a week, defendants did not properly calculate their overtime rates because defendants improperly availed themselves of the Federal and New York state tip credit.

63. When plaintiffs and other car wash attendants worked more than 40 hours a week, defendants did not pay them time and a half their regular rates of pay for all overtime hours worked because the cashiers regularly punched plaintiffs and other car wash attendants out at least a half hour before their shifts ended.

64. During their employment, plaintiffs and other car wash attendants were not exempt from the overtime provisions of the FLSA or any applicable state laws.

65.     Defendants were aware of plaintiffs' and other car wash attendants' work hours, but failed to pay them the full amount of wages to which they were entitled to for this work time under the law.

66.     Defendants' failures to pay proper wages in a timely manner were made without good faith, willfully, and with a reckless disregard for Plaintiffs' and other car wash attendants' rights; and Plaintiffs and other car wash attendants have been damaged by such failures.

67.     During the course of the plaintiffs' employment, Defendants employed other car wash attendants.

68.     Defendants subjected all car wash attendants to the same illegal practices and policies as named plaintiffs.

69.     Defendants managed Plaintiffs and other car wash attendants' employment, including the amount of overtime worked.  Defendants dictated, controlled, and ratified the wage and hour and all related employee compensation policies.

## GENERAL ALLEGATIONS

70.     Plaintiffs, individually, and on behalf of all similarly situated current and former employees of the Defendants, including its subsidiaries and affiliated companies, bring this action as a collective action under the FLSA to recover, *inter alia*, unpaid overtime compensation, minimum wages, and statutory penalties owed to the Plaintiffs and all other similarly situated employees.

71.     Defendants' failure to pay the Plaintiffs and all other similarly situated employees overtime compensation when these employees worked in excess of 40 hours per week has violated the FLSA and the NYLL.

72.     As a result of these unlawful practices, Plaintiffs and the similarly situated employees suffered a loss of wages.

## COLLECTIVE ACTION ALLEGATIONS

73.     Plaintiffs seek to proceed as a collective action pursuant to 29 U.S.C. §216(b) on behalf of themselves and the following class of persons:

> All car wash attendants who worked for the Defendants at their car wash locations in either Rockville Centre or Bellerose, New York any time from six years prior to the filing of this action to the entry of judgment in this action who give their consent, in writing, to become party plaintiffs (hereinafter the "FLSA Class").

74.     Plaintiffs and other members of the FLSA Class are similarly situated inasmuch as, *inter alia*, they were required to work in excess of 40 hours a week without being paid proper overtime compensation.

75.     Defendants have known that the Plaintiffs and similarly situated employees have performed work that has required overtime compensation.  Nonetheless, Defendants have operated under a scheme to deprive the Plaintiffs and the other members of the FLSA Class of overtime compensation by failing to properly compensate them for all time worked.

76.     Defendants' conduct, as alleged herein, has been willful and has caused significant damage to the Plaintiffs and the similarly situated employees.

## COUNT I
## VIOLATION OF THE FAIR LABOR STANDARDS ACT
## 29 U.S.C. §201 ET SEQ.
## FAILURE TO COMPENSATE FOR OVERTIME

77.     Plaintiffs reassert and reallege the allegations set forth in each of the above paragraphs as though fully set forth herein.

78.     The FLSA regulates the payment of wages by employers whose employees are "engaged in commerce or engaged in the production of goods for commerce, or are employed in

an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. §
207(a)(1).

79.     The individual Plaintiffs were entitled to overtime pay as required by the FLSA
because the Plaintiffs were engaged in commerce or in the production of goods for commerce.

80.     The corporate Defendants were and are subject to the overtime pay requirements
of the FLSA because said Defendants are enterprises engaged in commerce or in the production
of goods for commerce.

81.     Upon information and belief, the gross annual volume of sales made or business
done by each corporate Defendant for the years 2015 and 2014 was not less than $500,000.00.

82.     At all times relevant to this action, Plaintiffs and the similarly situated employees
have been entitled to the rights, benefits, and protections granted by the FLSA, 29 U.S.C. § 207,
*et seq.*

83.     Section 207(a)(1) of the FLSA states that an employee must be paid overtime,
equal to at least one and one half times the employee's regular rate of pay, for all hours worked
in excess of 40 per week.

84.     By the above-alleged conduct, Defendants have violated the FLSA by failing to
pay the FLSA collective action plaintiffs proper overtime compensation as required by the
FLSA.

85.     Section 13 of the FLSA, 29 U.S.C. §213, exempts certain categories of employees
from the overtime compensation requirements set forth in Section 207(a)(1) of the FLSA.
However, none of the Section 13 exemptions apply to the Plaintiffs or the similarly situated
employees because they have not met the requirements for coverage under the exemptions.

86.     The Plaintiffs and the similarly situated employees are victims of a uniform company-wide compensation policy.  This uniform policy, in violation of the FLSA, has been applied to all members of the FLSA collective action and has deprived them of overtime compensation.

87.     Defendants have acted willfully and have either known that their conduct violated the FLSA or have shown reckless disregard for the matter of whether their conduct violated the FLSA.  Defendants have not acted in good faith with respect to the conduct alleged herein.

88.     As a result of Defendants' violations of the FLSA, Plaintiff and all others similarly situated have incurred harm and loss in an amount to be determined at trial, along with liquidated damages, attorneys' fees and costs of litigation, pursuant to 29 U.S.C. § 216(b).

**COUNT II**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT**
**29 U.S.C. §201 ET SEQ.**
**FAILURE TO PAY MINIMUM WAGES**

89.     Plaintiffs reassert and reallege the allegations set forth in each of the above paragraphs as though fully set forth herein.

90.     The FLSA regulates the payment of wages by employers whose employees are "engaged in commerce or engaged in the production of goods for commerce, or are employed in an enterprise engaged in commerce or in the production of goods for commerce."  29 U.S.C. § 206(a).

91.     Corporate defendants were and are subject to the minimum wage requirements of the FLSA because said defendants are enterprises engaged in commerce or in the production of goods for commerce.

92.     Upon information and belief, the gross annual volume of sales made or business done by each corporate defendant for the years 2015 and 2014 was not less than $500,000.00.

93.     Defendants improperly availed themselves of the tip credit when they required plaintiffs and collective action members to share tips with employees who did not provide direct customer service.

94.     Defendants failed to inform plaintiffs and collective action members of the provisions of 29 U.S.C. section 203(m).

95.     As a result, defendants routinely and regularly failed to pay plaintiffs and collective action members the applicable minimum wage, in violation of 29 U.S.C. §206(a).

96.     As a result of Defendants' unlawful practices, Plaintiffs and the collective action members have suffered a loss of wages.

97.     As a result of Defendants' violations of the FLSA, Plaintiff and all others similarly situated have incurred harm and loss in an amount to be determined at trial, along with liquidated damages, attorneys' fees and costs of litigation, pursuant to 29 U.S.C. § 216(b).

## STATE-WIDE CLASS ALLEGATIONS

98.     Plaintiffs also seek to maintain this action as a class action, pursuant to Fed. R. Civ. P. 23(b)(3), on behalf of themselves individually and all other similarly situated employees who, during the relevant statute of limitations period, have worked as car wash attendants with respect to the claims pleaded in Counts III, IV, V, and VI of the complaint.

99.     Fed. R. Civ. P. 23(b)(3) provides that a cause of action may be maintained as a class action if the following elements are met:

(a)     The class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

(b)     There are questions of law or fact common to the class which predominate over and questions affecting only individual members;

(c)     The claims or defenses of the representative parties are typical of the claims or defenses of the class;

(d)     The representative parties will fairly and adequately protect the interests of the class; and

(e)     A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

### Class Definitions

100.   Plaintiffs seek certification of a class consisting of the following individuals:

All car wash attendants who worked for the Defendants at their car wash locations in either Rockville Centre or Bellerose, New York at any time from six years prior to the filing of this Action to the entry of judgment in this Action (hereinafter the "New York Class").

### Numerosity

101.   Plaintiffs satisfy the numerosity requirements as the proposed class is so numerous that joinder of all members is impracticable.

102.   The proposed class can be identified and located using the Defendants' payroll and personnel records.  Class members may be informed of the pendency of this action by direct mail and/or published and broadcast notice.

### Common Questions of Fact or Law

103.   There are questions of fact and law common to each class member which predominate over any questions affecting only individual members.  The questions of fact and law common to each class member arising from Defendants' actions include, but are not limited to, the following:

(a)     Whether the class members have qualified for exempt status;

(b)    Whether Defendants conducted an analysis of class members' compensation before failing to pay them overtime compensation and minimum wages;

(c)    Whether Defendants conducted an analysis of class members' duties and tasks before failing to pay them overtime compensation and minimum wages;

(d)    Whether the class members have been uniformly classified as exempt from overtime requirements;

(e)    Whether Plaintiffs and class members have regularly worked in excess of 40 hours per week;

(f)    Whether Plaintiffs and class members have been expected or required to work in excess of 40 hours per week;

(g)    Whether Defendants' failure to pay overtime compensation has been willful; and

(h)    Whether the Defendants' failure to pay minimum wages has been willful.

104.    The questions set forth above predominate over any questions affecting only individual persons.  With respect to considerations of consistency, economy, efficiency, fairness, and equity, a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

### Typicality

105.    Plaintiffs' claims are typical of the claims of the class members.  As a result of Defendants' unlawful conduct, Plaintiffs suffered similar injuries as those suffered by other members of the respective class he seeks to represent.

## Adequacy

106.    Plaintiffs are adequate representatives of the class they seek to represent because they are members of such class, and their interests do not conflict with the interests of the members of the class they seek to represent.  The interests of the class members will be fairly and adequately protected by Plaintiffs and their undersigned counsel.  Plaintiffs have hired competent attorneys who are experienced in class action litigation of this type and who are committed to the prosecution of this Action.

## Superiority

107.    A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable.  Class action treatment will allow a large number of similarly situated persons to prosecute their common claims in a single forum, simultaneously, efficiently, and without the unnecessary duplication of effort and expense if these claims were brought individually.

108.    Moreover, as the damages suffered by each class member may be relatively small, the expenses and burden of individual litigation would make it difficult for plaintiffs to bring individual claims.

109.    The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants and/or substantially impair or impede the ability of class members to protect their interests.

## COUNT III
## VIOLATION OF THE NEW YORK LABOR ARTICLE 6 AND 19
## FAILURE TO PAY OVERTIME UNDER NEW YORK LABOR LAW

110.     Plaintiffs reassert and reallege the allegations set forth in each of the above paragraphs as though fully set forth herein.

111.     At all times relevant to this Action, Plaintiffs were employed by Defendants within the meaning of New York Labor Law §§2 and 651.

112.     Under New York law, an employee must be paid overtime, equal to one and one half times the employee's regular rate of pay, for all hours worked in excess of 40 per week in the manner and methods provided by the FLSA.  12 NYCRR §142-2.2.

113.     By the above-alleged conduct, Defendants have failed to pay plaintiffs and members of the New York Class overtime compensation as required by the New York Labor Articles.

114.     Plaintiffs and the other members of the New York Class are not exempt from the overtime provisions of the New York Labor Articles, because they have not met the requirements for any of the reduced number of exemptions available under New York law.

115.     Plaintiffs and the other members of the New York Class are victims of a uniform company-wide compensation policy.  This uniform policy, in violation of the New York Labor Articles, has been applied to all members of the New York Class and has deprived them of proper overtime compensation.

116.     Defendants have acted willfully and have either known that their conduct violated the New York Labor Articles or have shown a reckless disregard for the matter of whether their conduct violated the New York Labor Articles.  Defendants have not acted in good faith with respect to the conduct alleged herein.

117.    As a result of Defendants' violations of the NYLL, Plaintiff and all other class members have incurred harm and loss in an amount to be determined at trial, along with liquidated damages, attorneys' fees and costs of litigation.

**COUNT IV**
**VIOLATION OF THE NEW YORK LABOR ARTICLES 6 AND 19**
**FAILURE TO PAY MINIMUM WAGES UNDER NEW YORK LABOR LAW**

118.    Plaintiffs reassert and reallege the allegations set forth in each of the above paragraphs as though fully set forth herein.

119.    At all times relevant to this Action, Plaintiffs and the class members were employed by Defendants within the meaning of New York Labor Law §§2 and 651.

120.    Defendants improperly availed themselves of the tip credit when they required plaintiffs and collective action members to share tips with employees who did not provide direct customer service.

121.    Defendants failed to inform plaintiffs and class members members of the New York state tip credit provisions.

122.    As a result, defendants willfully failed to pay plaintiffs and the class members at the applicable minimum hourly wage, in violation of the New York Minimum Wage Act, specifically New York Labor Law §652.

123.    As a result of Defendants' unlawful practices, Plaintiffs and the class members suffered a loss of wages.

124.    As a result of Defendants' violations of the NYLL, Plaintiffs and all other class members have incurred harm and loss in an amount to be determined at trial, along with liquidated damages, attorneys' fees and costs of litigation.

## COUNT V
### FAILURE TO PAY SPREAD OF HOURS COMPENSATION

125.    At all times relevant to this Complaint, Defendants were an "employer" of Plaintiffs and class members within the meaning of the NYLL and the regulations pertaining thereto.

126.    At all times relevant to this Complaint, Plaintiffs and class members were "employees" of Defendants within the meaning of the NYLL and the regulations pertaining thereto.

127.    At all times relevant to this Complaint, Defendants employed Plaintiffs and class members, suffering or permitting them to work within the meaning of the NYLL and the regulations pertaining thereto.

128.    In violation of the NYLL and the regulations pertaining thereto, Defendants failed to pay Plaintiffs and class members an additional hour of pay when the spread of hours between the beginning and end of Plaintiffs' and class members' workday exceeded ten.

129.    Such failures constituted outrageous conduct, made knowingly and willfully, or with a reckless indifference to Plaintiffs' and class members' rights.

130.    As a result of Defendants' violation of the NYLL and the regulations pertaining thereto, Plaintiffs and class members have incurred harm and loss in an amount to be determined at trial, along with liquidated damages, attorneys' fees and costs of litigation.

## COUNT VI
### VIOLATION OF NYLL SECTION 196-d

131.    In violation of NYLL section 196-d, Defendants regularly required the Plaintiffs and other members of the New York Class to share tips with employees who did not perform direct customer service.

132.     Such violation constituted outrageous conduct, made knowingly and willfully, or with a reckless indifference to Plaintiffs' and class members' rights.

133.     As a result of Defendants' violation of the NYLL and the regulations pertaining thereto, Plaintiffs and class members have incurred harm and loss in an amount to be determined at trial, along with liquidated damages, attorneys' fees and costs of litigation.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, by and through his attorneys, Neil H. Greenberg & Associates, P.C., demand judgment against Defendants, jointly and severally and in favor of Plaintiffs and all others similarly situated, for a sum that will properly, adequately, and completely compensate Plaintiffs and all others similarly situated for the nature, extent, and duration of the damages, costs of this action, and as follows:

A.     Order the Defendants to file with this Court and furnish to counsel a list of all names and addresses of all car wash attendants who currently work for or who have worked for Defendants within the last six years;

B.     Authorize Plaintiff's counsel to issue a notice at the earliest possible time to all current and former car wash attendants employed by the Defendants during the six years immediately preceding this Action, informing them that this Action has been filed, of the nature of the Action, and of their right to opt into this lawsuit if they worked in excess of 40 hours in a week during the liability period, for which they were not paid 0the FLSA-required overtime;

C.     Authorize Plaintiffs to certify their claims under the state law of New York;

D.    Declare and find that the Defendants committed one or more of the

following acts:

1.    Violated provisions of the FLSA by failing to pay overtime
wages and minimum wages to Plaintiffs and similarly
situated persons who opt into this Action;

2.    Willfully violated the overtime provisions of the FLSA;

3.    Violated the provisions of the NYLL by failing to pay
overtime wages, minimum wages, and spread of hours pay
to Plaintiffs and all class members;

4.    Willfully violated the overtime provisions of the NYLL.

E.    Award compensatory damages, including all overtime compensation

owed, in an amount according to proof;

F.    Award interest on all NYLL overtime compensation and other

compensation due accruing from the date such amounts were due;

G.    Award all costs, attorney's fees incurred in prosecuting this action as well

as liquidated damages under the FLSA and NYLL.

H.    Grant leave to add additional plaintiffs by motion, the filing of written

consent forms, or any other method approved by the Court; and

I.    Provide such further relief as the Court deems just and equitable.

Dated: Westbury, New York
April 6, 2016

Neil H. Greenberg & Associates, P.C.
Attorneys for the Plaintiffs
By: Neil H. Greenberg, Esq.
900 Merchants Concourse, Suite 314
Westbury, New York 11590
(516) 228-5100

## FAIR LABOR STANDARDS ACT CONSENT FORM

I, the undersigned, consent to be a party in <u>Martinez v. Ultra Sonic RVC, Inc. et al.</u> in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. section 216(b).

Dated: Westbury, New York
   December 29, 2015

**Mayra Martinez Juarez**

## FAIR LABOR STANDARDS ACT CONSENT FORM

I, the undersigned, consent to be a party in <u>Acosta Martinez v. Ultra Sonic RVC, Inc. et al.</u> in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. section 216(b).

Dated: Westbury, New York
    December 29, 2015

          *Digna · Acosta*
          **Digna Lili Acosta Martinez**

## FAIR LABOR STANDARDS ACT CONSENT FORM

I, the undersigned, consent to be a party in **De La Rosa v. Ultra Sonic RVC, Inc. et al.** in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. section 216(b).

Dated: Westbury, New York
December 30, 2015

_Felicita dela Rosa_

**Felicita De La Rosa**

## FAIR LABOR STANDARDS ACT CONSENT FORM

I, the undersigned, consent to be a party in **Escobar Rafael v. Ultra Sonic RVC, Inc. et al.** in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. section 216(b).

Dated: Westbury, New York
      December 30, 2015

**Andres Apostol Escobar Rafael**